IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROD MARQUARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| vs. | ) | NO. 1:10-CV-03946-JEC |
| | ) | |
| STEPHEN KING and SIMON & | ) | |
| SCHUSTER GLOBAL SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Rod Marquardt files this Response in Opposition to Defendants' Motion to Dismiss, showing this Honorable Court that Defendants' motion should be denied or, in the alternative, Plaintiff should be given leave to amend his Complaint, for the following reasons:

## I. STATEMENT OF FACTS

Plaintiff Rod Marquardt is the sole author of the original literary work *Keller's Den*, a novel published by PublishAmerica, LLLP in 2002. (Complaint at ¶ 8.) Marquardt registered his copyright in *Keller's Den*, and the registration number is TX0007118190. (Id.) *Keller's Den* has been and continues to be made

available for sale to the public in both print and digital download editions, including via Amazon.com and Barnes & Noble.  (Id. at ¶ 9.)  Defendant Stephen King is the author of *Duma Key*, a novel published in 2008 by Defendant Simon & Schuster, Inc.  (Complaint at ¶ 10.)  *Duma Key* has been and continues to be offered for sale to the public.  (Id.)

Plaintiff has alleged similarities between *Keller's Den* and *Duma Key* in their characters, settings, themes, plots, mood and pace, and other literary elements that are substantial in their aggregate.  For example, Plaintiff alleges that Martin, the protagonist of *Keller's Den*, and Edgar, the protagonist of *Duma Key*, are substantially similar.  (Complaint at ¶ 12).  Specifically, Plaintiff alleges that both characters are compelled to paint mysterious pictures under the influence of a malign supernatural force, and both of their paintings display insights gained from psychic or telepathic abilities (*i.e.*, things the characters could not otherwise know).  Both characters go into a hypnotic or trancelike state while painting under the influence of the supernatural force.   During these episodes both characters are unaware of their surroundings.   (Id.)   The description of these states and the psychically-inspired visions they produce is strikingly similar in both texts:   In *Keller's Den*, the hypnotic state "controlled him like the talons of an eagle

wrapped around a harmless garter snake" (page 21), while in *Duma Key*, Edgar "was like a bird hypnotized by a snake" (page 447).  (Complaint at ¶ 12(a)).

Similarly, in *Keller's Den*, Martin experiences his insights as strobe-like visions in his head and pictures that flashed in his mind like a slow-motion movie (pages 48, 51, and 133), while in *Duma Key*, Edgar has visions of a nightmare that "flickered like an old movie" (page 514).  (Complaint at ¶ 12(jj)).  In their visions, both protagonists see faces of the past that were killed by the malign supernatural influence.   In *Keller's Den*, these appear on a fiery canvas, while in *Duma Key* they were on a muddy wall.  (Complaint at ¶ 12(h)).

Both characters paint rapidly and beyond any natural ability.  (Complaint at ¶ 12).  Likewise, some of their paintings depict similar subject matters:  a nude fiancée with her head cocked to one side in *Keller's Den* (page 58), and a nude ex-wife with head slightly bent in *Duma Key*; a nude man who is grinning in *Keller's Den* (page 58), and a nude man who is smiling in *Duma Key* (110).  (Complaint at ¶ 12(g)).  Moreover, both characters have ex-wives or fiancées who cheat on them with a business associate.   In *Keller's Den*, Janet cheats on Martin with the attorney (page 54).  In *Duma Key*, Pam cheats on Edgar with the accountant (pages 111, 115, 155, and 303).  (Complaint at 12(pp)).

Moreover, the similarities are not confined to the main characters (Martin and Edgar).  Plaintiff alleges that both novels feature similarly prominent and mysterious elderly female characters whose pasts are significant to the storyline. In *Keller's Den*, this character is Mrs. Gladys Baxter, also referred to as "Old Lady Baxter."  In *Duma Key*, the analogous character is Miss Elizabeth Eastlake, also referred to as "Ole Miss Elizabeth."  (Complaint at ¶¶ 12(l) and (n)).  Both novels also feature four secondary characters (two male and two female) who are slain by the malign supernatural force at work in the story.  In *Keller's Den*, these characters are Sarah, Courtney, Father Sherman, and Joe.  In *Duma Key*, these are characters Ilse, Mary Ire, Dr. Kamen, and Tom.  (Complaint at ¶ 12(p)).  Both novels also include psychiatrists as secondary characters who attempt to help the protagonists cope with the tragedies they encounter as a result of the malign supernatural force.  In *Keller's Den*, this character is Dr. Cameron, and in *Duma Key*, this character is Dr. Kamen.  (Complaint at ¶ 12(s)).  In addition, the novels both also feature similar secondary characters who also have psychic abilities.  In *Keller's Den*, Joe uses telepathy to tap into Martin's thoughts during episodes of ancestral spirit influence and knows what Martin is doing or painting, while in *Duma Key*, both the characters of Jerome Wireman and Mrs. Eastlake display similar telepathic prowess, including knowing what Edgar has painted before they

otherwise could.   (Complaint at ¶ 12(tt)).   Moreover, both novels also feature similar imagery and scenes, particularly the vivid scenes involving skeletons coming to life on ships of the dead in the ocean off the Florida coast as part of their protagonists' confrontation with the malign supernatural force.   (Complaint at ¶¶ 12(aa)-(dd)).

## II. ARGUMENT & CITATION OF AUTHORITY

*Standard of Review*

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the well-pleaded factual allegations of the complaint, and it must construe all reasonable inferences from those factual allegations in favor the nonmoving party.   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).   To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"   *Iqbal*, 129 S. Ct. at 1949 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*

**A.** **The Court should reject the extra-pleading material relied upon by Defendants and deny their motion to dismiss because Plaintiff should be allowed to conduct discovery and present all the material that is pertinent to the fact issues raised in the motion.**

Federal Rule of Civil Procedure 12(d) provides as follows:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

As the language suggests, the Court has discretion to determine whether or not to accept the submission of material beyond the pleadings that is offered in conjunction with a 12(b)(6) motion, thereby converting it to a motion for summary judgment, or to reject such material and deny the motion. *Harper v. Laurence County, Ala.*, 584 F.3d 1030, 1034 (11th Cir. 2009), *superseded on other grounds*, 584 F.3d 1227 (11th Cir. 2010). When the extra-pleading material is sufficiently comprehensive that it will allow rational determination of a motion for summary judgment under the standards of Federal Rule of Civil Procedure 56, the Court may choose to consider it; otherwise, the Court should reject it and deny the motion. *See Brennan v. Nat'l Telephone Directory Corp.*, 850 F. Supp. 331, 335 (D.C. Pa. 1994) (holding that when there has been little or no discovery by the parties, conversion to a summary judgment motion is improper because an adequate factual record has not been developed); *see also Johnson v. Mobile County Sheriff Dep't*,

No. 06-0821-WS-B, 2007 WL 2023488, *2 (slip op.) (S.D. Ala. Jul. 9, 2007) (declining to convert a motion to dismiss to one for summary judgment because the court concluded that "this action is in its infancy and the parties are ill-equipped at this early stage of the proceedings to present all the evidence that would be required for a proper Rule 56 review").[1]

Here, Plaintiff has had no opportunity to conduct discovery, and there is additional evidence beyond the novels themselves, such as expert testimony, that would be pertinent to the issue of substantial similarity, so it would be improper to convert this motion to one for summary judgment. The issue of substantial similarity, unlike a question of law such as the interpretation of a contract, is especially ill suited to the type of determination urged by Defendants here. Substantial similarity is a question of fact. *Donald Frederick Evans & Assocs. v. Continental Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986). Contrary to the simplistic analysis urged by Defendants, there is no bright-line rule for determining

---

[1] Additionally, when a 12(b)(6) proceeding becomes one for summary judgment, the moving party's burden changes – *i.e.*, rather than merely showing that the challenged pleading fails to state a claim for relief, the movant is obligated to demonstrate, in accordance with Rule 56, that there exists no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991). Here, Defendants cannot, and indeed do not purport to, satisfy the standards of Rule 56.

substantial similarity.  *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1310 (11th Cir. 2010).

While Defendants correctly recite the standard of whether a "lay observer" would consider the alleged copy as having been appropriated from the copyrighted work, their suggestion that the Court should simply read the two texts and rely solely on its own interpretation without considering further evidence is deeply flawed.  There is no easy rule of thumb as to the quantum of similarity permitted without crossing the line of substantial similarity.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir.), *cert. denied*, 537 U.S. 1066 (2002).  While the works must be substantially similar, they need not be virtually identical, and the presence of some dissimilarities between the works does not end the inquiry.  *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1149-50 (11th Cir. 2007).  In this Circuit, courts apply a two-pronged test:  (1) an extrinsic or objective test, and (2) an intrinsic or subjective test.  *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999) (*citing Beal v. Paramount Pictures*, 806 F. Supp. 963, 967 (N.D. Ga. 1992), *aff'd* 20 F.3d 454 (11th Cir. 1994)).  The view of the hypothetical "lay observer" is a formulation of the intrinsic or subjective test, and is therefore

only part of the analysis.[2]   *Id.*   Under the extrinsic or objective test, "expert

testimony and analytic dissection are appropriate."   *Id.*   Here, Plaintiff has had no

opportunity to conduct discovery in order to develop and present the Court with the

expert testimony and analytic dissection of the two works necessary to evaluate the

extrinsic or objective test for substantial similarity.   For this reason alone, it would

be improper to consider the extra-pleading material relied upon by Defendants in

support of their motion because the evidentiary record is far from complete.

Defendants incorrectly rely on *Leigh v. Warner Brothers, Inc.*, 212 F.3d

1210 (11th Cir. 2000) and a number of similar decisions from other circuits, in

support of their argument that the Court can consider the extra-pleading material

relied upon in their 12(b)(6) motion to dismiss.  *Leigh* involved a motion for

summary judgment, not a motion to dismiss.   *Id.* at 1214.   While the district court

in *Leigh* did evaluate the motion for summary judgment prior to the conclusion of

*all* discovery, it did not do so at the beginning of the pleadings stage as Defendants

would have this Court do, and the Plaintiff in *Leigh* was given an opportunity to

---

[2] Indeed, as many courts have noted, the subjective, "lay person's perspective"
standard must be applied cautiously when a work contains both protectible and
unprotectible elements because a literal application of the rule in the absence of
more careful analysis can produce incorrect results.  *See Williams v. Crichton*, 84
F.3d 581, 588 (2d Cir. 1996).

conduct *some* discovery prior to responding to the motion for summary judgment.[3] *Id.* Thus, the decision in *Leigh* offers no support for the draconian procedure urged on this Court by Defendants in an effort to foreclose any discovery.  Likewise, the opinion in *O'Neill v. Dell Publishing Co.*, 630 F.2d 685 (1st Cir. 1980), cited and relied on by Defendants also involved a motion for summary judgment, not a motion to dismiss under Rule 12(b)(6).  Similarly, *Polsby v. St. Martin's Press, Inc.*, 8 Fed. Appx. 90 (2d Cir. 2001), also involved a motion for summary judgment, not a motion to dismiss like the one Defendants have filed here.  While the case in *Allen v. Scholastic, Inc.*, No. 10 Civ. 5335 (SAS), 2011 WL 43448 (S.D.N.Y. Jan. 16, 2011), did involve a motion to dismiss and the court there did consider extra-pleading materials (apparently taking judicial notice of the contents of both books), that aspect of the decision is aberrant and at variance with the plain language of Rule 12(d).  Therefore, Defendants' motion to dismiss should be denied because it relies on extra-pleading material.  The factual record has not yet been sufficiently developed to enable the Court or the parties to engage in a proper Rule 56 analysis.

---

[3] Interestingly, the court in *Leigh* did not, contrary to Defendants' characterization, determine that discovery was not necessary. Rather, it reviewed the district court's decision not to allow further discovery for abuse of discretion, and it ultimately reversed the district court's grant of summary judgment in favor of the defendant, finding sufficient evidence to warrant a trial on the issue of substantial similarity. 212 F.3d at 1216.

**B.     The Court should deny Defendants' motion because the Complaint alleges enough similarities between *Keller's Den* and *Duma Key* in areas of protectible expression to state a plausible claim of infringement.**

Plaintiff's Complaint alleges sufficient similarities between *Keller's Den* and *Duma Key* as to original, copyright protectible elements to state a plausible claim for copyright infringement.   The standard for copyright infringement is "substantial similarity." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1149-50 (11th Cir. 2007).   This standard does not, however, require a plaintiff to prove that the works are "virtually identical."  *Id.*   The presence of some dissimilarities between the two works does not end the inquiry.  *Id.*; *see also Leigh v. Warner Bros.*, 212 F.3d 1210, 1215-16 (11th Cir. 2000).

The Defendants incorrectly argue that the only similarities between *Keller's Den* and *Duma Key* are stock elements of the horror or supernatural fiction genre that lack originality and therefore are not protectible under the law of copyright. "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir.), *cert. denied*, 429 U.S. 980 (1976); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999).  Copyright protection covers the "pattern" of a work – i.e., in the case of a fiction novel or screenplay, this includes the setting, theme, plot, sequence of

events, and development and interplay of the characters taken as a whole.  *Id.* at 1249 (*citing* Z. Chaffee, *Reflections on the Law of Copyright*, 45 COL. L. REV. 503, 513 (1945)).  Familiar literary tropes, stock elements of a given genre, or so-called *scenes a faire*, such as "incidents, characters, or settings that are indispensable or standard in the treatment of a given topic," are not copyrightable.  *Id.*; *see also Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir.) (holding that there is no protection for common elements in police fiction, such as "drunks, prostitutes, vermin and derelict cars" and "foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop.")  When a work contains both protectible and unprotectible elements, the Court must inquire whether the protectible elements standing alone are substantially similar.  *Williams v. Crichton*, 84 F.3d 581, 586 (2d Cir. 1996).

Here, Plaintiff has alleged similarities between *Keller's Den* and *Duma Key* in their characters, settings, themes, plots, mood and pace, and other literary elements that are substantial in their aggregate.  A consideration of these combined aspects of the two works, based solely on the allegations of the Complaint, reveals a plausible claim for infringement.  For example, Plaintiff alleges that Martin, the protagonist of *Keller's Den*, and Edgar, the protagonist of *Duma Key*, are substantially similar.  (Complaint at ¶ 12).  Specifically, both characters are

compelled to paint mysterious pictures under the influence of a malign supernatural force, and both their paintings display insights gained from psychic or telepathic abilities; things the characters could not otherwise know.   Both characters go into a hypnotic or trancelike state while painting under the influence of the supernatural force.   During these episodes both characters are unaware of their surroundings.   (Id.)   The description of these states and the psychically-inspired visions they produce is strikingly similar in both texts:   In *Keller's Den*, the hypnotic state "controlled him like the talons of an eagle wrapped around a harmless garter snake" (page 21), while in *Duma Key*, Edgar "was like a bird hypnotized by a snake" (page 447).   (Complaint at ¶ 12(a)).   In *Keller's Den*, Martin experiences his insights as strobe-like visions in his head and pictures that flashed in his mind like a slow-motion movie (pages 48, 51, and 133), while in *Duma Key*, Edgar has visions of a nightmare that "flickered like an old movie" (page 514).   (Complaint at ¶ 12(jj)). In their visions, both main characters see faces of the past that were killed by the malign supernatural influence.   In *Keller's Den*, these appear on a fiery canvas, while in *Duma Key* they were on a muddy wall. (Complaint at ¶ 12(h)).

Both characters paint rapidly and beyond any natural ability.   (Complaint at ¶ 12).   Likewise, some of their paintings depict similar subject matters:   a nude

fiancée with her head cocked to one side in *Keller's Den* (page 58), and a nude ex-wife with head slightly bent in *Duma Key*; a nude man who is grinning in *Keller's Den* (page 58), and a nude man who is smiling in *Duma Key* (110).  (Complaint at ¶ 12(g)).  Moreover, both characters have ex-wives or fiancées who cheat on them with a business associate.  In *Keller's Den*, Janet cheats on Martin with the attorney (page 54).  In *Duma Key*, Pam cheats on Edgar with the accountant (pages 111, 115, 155, and 303).  (Complaint at 12(pp)).

Moreover, the similarities are not confined to Martin and Edgar.  Both novels feature similarly prominent and mysterious elderly female characters whose pasts are significant to the storyline.  In *Keller's Den*, this character is Mrs. Gladys Baxter, also referred to as "Old Lady Baxter."  In *Duma Key*, the similar character is Miss Elizabeth Eastlake, also referred to as "Ole Miss Elizabeth."  (Complaint at ¶¶ 12(l) and (n)).  Both novels also feature four secondary characters (two male and two female) who are all slain by the malign supernatural force at work in the story.  In *Keller's Den*, these characters are Sarah, Courtney, Father Sherman, and Joe.  In *Duma Key*, these are characters Ilse, Mary Ire, Dr. Kamen, and Tom.  (Complaint at ¶ 12(p)).  Both novels also include psychiatrists as secondary characters who attempt to help the protagonists cope with the tragedies they encounter as a result of the malign supernatural force.  In *Keller's Den*, this

character is Dr. Cameron, and in *Duma Key*, this character is Dr. Kamen. (Complaint at ¶ 12(s)).  In addition, the novels both also feature similar secondary characters who also have psychic abilities.  In *Keller's Den*, Joe uses telepathy to tap into Martin's thoughts during episodes of ancestral spirit influence and knows what Martin is painting, while in *Duma Key*, both the characters of Jerome Wireman and Mrs. Eastlake display similar telepathic prowess, allowing them to know what Martin has painted before they otherwise could.  (Complaint at ¶ 12(tt)).  Additionally, both novels also feature similar imagery and scenes, particularly the vivid scenes involving skeletons coming to life on ships of the dead in the ocean off the Florida coast as part of their protagonists' confrontation with the malign supernatural force.  (Complaint at ¶¶ 12(aa)-(dd)).

Contrary to Defendants' arguments, these similarities are more than mere stock elements of the horror or supernatural fiction genres.  They are specific, highly detailed similarities that have sufficient originality to be entitled to copyright protection.[4]  The similarities of expression of both the main and secondary characters in *Keller's Den* and *Duma Key* are substantial both in number and frequency as well as in their degree of significance to the novels as a whole.

---

[4] "Original" for purposes of copyright protection means that the work was independently created by the author and possesses some degree of creativity.  *Cf. Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000).  It does not mean "unique" or "novel." *Id.*

Martin and Edgar are similar in ways that are the pivotal, defining aspects of their characters in both books.   Indeed, both books are principally comprised of the stories of the main characters' struggles against the malign supernatural forces that beset them, which is most prominently expressed through their paintings.

That is not to say, however, that Martin and Edgar or their stories are identical, and Defendants do point out some relevant differences – Edgar suffers severe cranial trauma that causes him to gain psychic/telepathic abilities and makes him a subject of interest for the malign supernatural force known as Perse, while Martin suffers from a family curse that causes him to be targeted by the malefic spirit of his ancestor.   Edgar overcomes Perse through willpower and by using his psychic abilities in conjunction with those of friends, while Martin overcomes the demonic spirit of his ancestor through renewed faith in God.   Defendants also allege that Martin commits rapes and murders under the influence of his evil ancestor spirit in *Keller's Den*, but that Edgar has no similar experience in *Duma Key*.[5]   Even if Defendants were correct, however, regarding these differences, they

---

[5] Once this case reaches a stage where extra-pleading reference to the two books is permissible, Plaintiff will show that Defendants are wrong on this allegation.  After the accident that proved to be the genesis of his supernatural abilities, Edgar – during "blackouts" – nearly choked his wife to death on one occasion and stabbed her with a knife on another.

are not enough for the Court to say as a matter of law that the Complaint fails to state a plausible claim for infringement.

**C.     Even if the Court finds that Plaintiff's Complaint is deficient, the Court should give Plaintiff leave to amend it to clarify and make a more definite statement of the grounds for his claim of copyright infringement.**

Even if the Court finds that Plaintiff's Complaint is deficient, Plaintiff should still be given at least one opportunity to amend his Complaint in order to state a plausible claim.   *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  A district court's discretion to dismiss a complaint without leave to amend "is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988).  Generally, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).  Here, even if the Court finds that Plaintiff's Complaint is deficient in some way, it should still give Plaintiff leave to amend in order to more clearly plead his claim.   Plaintiff readily acknowledges that the long list of similarities in paragraph 12 of the Complaint contains both protectible and unprotectible elements of the novels, and Plaintiff

would be more than willing to revise the Complaint to focus it only on those elements that are capable of copyright protection.

### III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court DENY Defendants' motion to dismiss or, in the alternative, grant Plaintiff leave to file an Amended Complaint.

DATED:      April 11, 2011.

Respectfully submitted,

/s/ Jamie P. Woodard

_____

Jamie P. Woodard
Georgia Bar No. 775792

WELLBORN, WALLACE & WOODARD
1175 Peachtree Street NE
100 Colony Square, Suite 300
Atlanta, GA 30361
(404) 815-9595
(404) 815-9957 (FAX)
E-mail: Jamie@wellbornlaw.com

*Attorneys for Rod Marquardt*

In compliance with LR 7.1, I hereby certify that this *Response in Opposition* was prepared using Times New Roman 14 pt font and therefore complies with LR 5.1.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROD MARQUARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| vs. | ) | NO. 1:10-CV-03946-JEC |
| | ) | |
| STEPHEN KING and SIMON & | ) | |
| SCHUSTER GLOBAL SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2011, I electronically filed the foregoing

Notice of Appearance with the Clerk of Court using the CM/ECF system, which

will automatically send e-mail notification of such filing to counsel of record.

DATED:     April 11, 2011.

Respectfully submitted,

/s/ Jamie P. Woodard

_____

Jamie P. Woodard
Georgia Bar No. 775792

WELLBORN, WALLACE & WOODARD
1175 Peachtree Street NE
100 Colony Square, Suite 300
Atlanta, GA 30361
(404) 815-9595
(404) 815-9957 (FAX)
E-mail: Jamie@wellbornlaw.com

*Attorneys for Rod Marquardt*