IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROD MARQUARDT,

        Plaintiff,

v.

STEPHEN KING and
SIMON & SCHUSTER, INC.,

        Defendants.

Civil Action No.
1:10-CV-03946-JEC

**DEFENDANTS STEPHEN KING AND SIMON & SCHUSTER, INC.'S
RESPONSE TO PLAINTIFF'S SURREPLY BRIEF**

DAVIS WRIGHT TREMAINE LLP
Elizabeth McNamara (admitted *pro hac vice*)
1633 Broadway 27th floor
New York, New York 10019
Phone (212) 489-8230
Fax (212) 489-8340

CARLTON FIELDS, P.A.
Walter H. Bush (Bar No. 098825)
Christopher B. Freeman (Bar No. 140867)
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
(404) 815-3400

*Attorneys for Defendants*

Peter A. Herbert (admitted *pro hac vice*)

*Co-Counsel for Defendant Stephen King*

# TABLE OF CONTENTS

                                                                                                                 **Page**

SUMMARY OF ARGUMENT ...................................................................................1

ARGUMENT .................................................................................................................3

    I.     The Copyrightable Expression of the Two Works Bears No Similarity ...................................................................................................3

           A.    Ideas Are Not Protectable and the Two Works' Expression of Allegedly Similar Ideas Is Entirely Dissimilar .......................4

           B.    Many of Marquardt's Alleged "Similarities" Are Not Similarities at All ...............................................................6

           C.    Marquardt's Reliance on "Similarities" Common to the Horror Genre is Misplaced ..........................................................8

CONCLUSION ............................................................................................................11

In accordance with this Court's order of June 14, 2011 [Dkt. 26], Defendants Stephen King ("King") and Simon & Schuster, Inc. ("Simon & Schuster") (collectively, "Defendants") respectfully submit this response to the surreply brief filed by Rod Marquardt a/k/a Rod Morgan ("Marquardt" or "Plaintiff") on June 9, 2011 [Dkt. 24].

## SUMMARY OF ARGUMENT

As Plaintiff's surreply demonstrates, the parties are in agreement concerning the principles of law to be applied in this case. Copyright law does not protect abstract ideas or scenes-à-faire that necessarily flow from or are incidental to a particular genre or subject matter. [Dkt. 24 at 2.][1] Instead, the question of copyright infringement turns on the presence or absence of substantial similarity in the *copyrightable* expression contained in the two works at issue. [*Id.*] And it is on that critical element that Plaintiff's claim fails: the protectable expression of *Keller's Den* is not remotely similar, let alone substantially similar, to *Duma Key*. Nor is the claim advanced by increasing the items identified on Plaintiff's laundry list of abstract and supposed similarities, as his surreply attempts. As established at the outset of this motion, mere lists of abstract similarities, divorced from the expressive content of two works, do not inform the substantial similarity analysis.

---

[1] For ease of reference, Defendants refer to the pages in Marquardt's surreply [Ex. A to Dkt. 24] by number, beginning with page 1.

1

[*See* Dkt. 11 at 16 (citing *Beal v. Paramount Pictures, Corp*. 806 F. Supp. 963, 967 & n.2 (N.D. Ga 1992), *aff'd*, 20 F.3d 454 (11th Cir. 1994); *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1257 (11th Cir. 1999) (finding such lists to be "inherently subjective and unreliable," because "many such similarities could be found in very dissimilar works"); *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996) (same); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir.), *cert. denied*, 476 U.S. 1159 (1986) (noting the "difficulty of comparing unified artistic works on the basis of such scattered analogies"); *Starobin v. King*, 137 F. Supp. 2d 93, 97 (N.D.N.Y. 2001) ("comparing works of artistic expression … by dissection neglects to pay proper attention to the works as a whole").] As these cases and others demonstrate, random lists of supposed "similarities" extracted from two works cannot substitute for the necessary comparison of the respective works "as a whole" to see if they are substantially similar in protected expression. Instead, as Plaintiff now confirms, the Court should "use both books" and compare them. Once the books are read, it becomes irrefutable that, because of the striking differences in the storylines and the development of the principal characters, the protected expression contained in the two works is strikingly dissimilar. [Dkt. 24 at 1.]

2

DWT 17432515v2 3901014-000644

In short, Plaintiff's surreply is nothing more than an extension of the laundry list of coincidental and random similarities found in his Complaint. [Dkt. 1.][2] By once again relying exclusively on lists of abstract concepts and randomly selected non-contextual similarities, Marquardt's surreply amply illustrates why courts have repeatedly found such lists to be an inadequate, and even "illegitimate," substitute for a comparison of the copyrightable elements, including the "plot, characterization, mood, pace and setting of two works." *Beal*, 806 F. Supp. at 967-68;[3] *see also Starobin*, 137 F. Supp. 2d at 95-97.

Defendants' motion to dismiss should be granted.

## ARGUMENT

### I.
### THE COPYRIGHTABLE EXPRESSION OF THE TWO WORKS BEARS NO SIMILARITY

Plaintiff attempts to bolster his claim by providing the Court with "*all* of the similarities between the novels." [Dkt. 24 at 1.] However long Marquardt extends his list of supposedly similarly "unique" or "generic" ideas, it does not change the

---

[2] In fact, as Plaintiff acknowledges [Dkt. 24 at 1], many of the alleged similarities identified in Marquardt's surreply were also included in the Complaint and were therefore addressed in Defendants' prior briefs. [*See, e.g.*, Dkt. 24, ¶¶ 3, 6, 10, 16, 38, 40, 44, 46, 49, 58, 61-62, 72, 79, 84, 88, etc.]

[3] While Stephen King never heard of Plaintiff before this lawsuit and most certainly never saw or read his book, Plaintiff's belated contentions regarding Mr. King's alleged access to his novel *Keller's Den* (*see* Dkt. 24 at 1-2) are irrelevant to the issues presented. Solely for purposes of this motion, Defendants assume *arguendo* access. [*See* Dkt. 11 at 13, n.4; Dkt. 23 at 8, n.4.]

3

inevitable conclusion that the two books share no protectable expression and, accordingly, that Plaintiff cannot state a claim. At its heart, Plaintiff's claim falters due to three fatal deficiencies.

A.   **Ideas Are Not Protectable and the Two Works' Expression of Allegedly Similar Ideas Is Entirely Dissimilar**

Plaintiff's claim rests on a fundamental misunderstanding of the idea/expression dichotomy. "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of the idea and never to the idea itself." *Herzog*, 193 F.3d at 1248; *Harper & Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 547 (1985) ("[N]o author may copyright facts or ideas."); 17 U.S.C. § 102(b). Whether "generic" or "unique" [Dkt. 24 at 3], ideas are not protectable and, as Plaintiff's own analysis makes abundantly clear, these allegedly similar ideas in the two books are developed and expressed in a wholly dissimilar manner.

Consider, for example, Plaintiff's claim that both works contain the idea of "main characters . . .controlled by a cryptic force which sometimes controls what they will paint." [Dkt. 24 ¶ 4.] As evidence that this idea is present in both works, Plaintiff then offers numerous examples of the *expression* of that idea, particularly in *Duma Key*, but does not cite a single example where the expression in the two works is in any way similar. [*Id.*] Marquardt's laundry list continues with

4

countless other supposedly similar "ideas" that are expressed entirely differently. Thus, he alleges that both books include the concept of a televised news report about a violent crime [*id.* ¶ 41]; however, the expression of this idea (including the crimes described) is completely different. In *Keller's Den*, the new story is a supernatural event in which an anchor reports on a fire which occurred more than 50 years earlier, *see Keller's Den* at 234-36, while in *Duma Key*, the news story follows the abduction, rape and murder of a local child in real-time, airing repeatedly over the course of several days and becoming an inspiration for Edgar's art. *See Duma Key* at 213-43. Likewise, Marquardt contends that the two books share the idea that "the paintings in both novels reveal a mysterious part of the main character's life, past or present," but the examples that he cites only serve to highlight the *differences* in the expression of this idea between the two books. [*See* Dkt. 24 ¶ 15.] Thus, the paintings in *Keller's Den* reveal Martin's ancestry, which includes genocide, the Civil War and other events involving his ancestors from many years before. In stark contrast, the "mysteries" revealed in *Duma Key*'s paintings involve, for example, the present day affairs of Edgar's wife, his daughter's fiancé, the red picnic basket hidden in his neighbor's attic and items from her childhood. *Id.* One could go on and on, but we will not burden the Court.

### B. Many of Marquardt's Alleged "Similarities" Are Not Similarities at All

As noted in Defendants' reply, a significant number of the supposed similarities do not even share a common idea, but are instead not similar at all. [Dkt. 23 at 11-15.] Marquardt's surreply continues in this troubling vein. For example, Marquardt claims that "one painting in each novel is identical" [Dkt. 24 at 4], only later explaining that the only similarity between the two paintings is that they both involve a nude or a partially nude woman [*id.* at ¶ 6]. Far from "identical," the paintings are utterly dissimilar. In *Keller's Den*, Martin's grandfather, Joe, possesses Martin and paints a picture of himself (Joe) having sex with Martin's fiancée, Janet – an event which *never* actually happened. *Keller's Den* at 58, 92. In *Duma Key,* Edgar paints his ex-wife, Pam, sitting on a bed alone, with two naked men watching her from the background. The two men are actual lovers of Pam, thereby giving Edgar a psychic insight into actual events in his ex-wife's life. *Duma Key* at 110-112.

As another example, Marquardt repeatedly attempts to read a Christian theme into King's book where one does not exist, alleging, for example, that "both main characters use something holy to destroy their curse" [*id.* ¶ 35]; "[b]oth novels use something holy to burn something evil" [*id.* ¶ 168]; and "[b]oth novels reference something holy that is circular in shape" [*id.* ¶ 167]. In fact, the item at

6

issue in *Duma Key* is *not* holy – it is a silver bracelet that, together with a number of silver-tipped harpoons and a silver candlestick, is capable of maiming or wounding the zombies in the same way that a silver bullet is used to kill mythical creatures such as werewolves or vampires in many types of horror novels. [*See Duma Key* at 450, 462, 563-64, 588.]

Beyond these types of broader falsities, Marquardt's list is replete with supposed "similarities" that are patently dissimilar on their face. Marquardt cannot seriously equate the fact that a woman wears a black sari in *Keller's Den* with the fact that a woman wears a red cloak in *Duma Key* [Dkt. 24 at 4; ¶ 77]; that Martin hangs his paintings on his "wall of fame" in *Keller's Den* while Edgar lies his against the north wall of his studio in *Duma Key* [Dkt. 24 ¶ 23]; that *Keller's Den* refers to a church choir while *Duma Key* refers to a trio at a gallery opening [*id.* ¶ 105]; that Martin hurt his shin while Edgar hurt his foot [*id.* ¶ 214]; that a character in *Keller's Den* lives at 1300 Hickory Lane while a character in *Duma Key* lives at 13 Salmon Point [*id.* ¶ 43]; that an old woman in *Keller's Den* wore black orthopedic-looking shoes while an old woman in *Duma Key* wore blue high top tennis shoes [*id.* ¶ 54]; or that a character in *Keller's Den* went to college in Massachusetts while a character in *Duma Key* went to college in Rhode Island [*id.* ¶ 269].

7

Still other examples are nothing more than random coincidences that are not copyrightable and cannot be termed "similarities" for purposes of the substantial similarity analysis. Thus, Marquardt alleges that both books make incidental mention of the following: elevators [*id.* ¶ 254]; stairs [*id.* ¶ 214]; TV dinners [*id.* ¶ 125]; buildings with glass doors [*id.* ¶ 239]; the stock market [*id.* ¶ 175]; a jungle [*id.* ¶ 174]; rocking chairs [*id.* ¶ 253]; candles [*id.* ¶ 270]; "listening to [different] musicians . . . on the radio" [*id.* ¶ 242]; moonlight [*id.* ¶ 226]; receding hairlines [*id.* ¶ 119]; a little league baseball field [*id.* ¶ 163 [*sic*]]; cactus plants [*id.* ¶ 151]; flying birds [*id.* ¶ 147]; cigars and/or smoke rings [*id.* ¶ 98]; barking dogs owned by a neighbor [*id.* ¶ 101]; heart graffiti with a couple's initials [*id.* ¶ 217]; and different children's cartoon characters [*id.* ¶ 115]. None of these "similarities" even begin to support a claim for copyright infringment and all should be disregarded by the Court.

**C.    Marquardt's Reliance on "Similarities" Common to the Horror Genre is Misplaced**

The parties agree that copyrightable expression does not include *scenes à faire*, that is, "sequences of events which necessarily follow from a common theme" or "incidents, characters, or settings that are indispensable or standard in the treatment of a given topic." *Herzog*, 193 F.3d at 1248; *Beal*, 806 F. Supp. at 966-67; *see also* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*

8

§ 13.03[B][4] at 13-78.7 (2003) ("the choice of writing about vampires leads to treating killings, macabre settings, and choices between good and evil"). Applying this general principle, this Court has had no trouble dismissing a copyright infringement claim where two works about "a foreign prince coming to the United States" both contained numerous stock elements common to the genre, such as "domineering kings, arranged marriages, ... abundant wealth," and a protagonist who ultimately married an American woman, but which were otherwise very different in their expression of these stock ideas and themes. *Beal*, 806 F. Supp. at 967-68.

Accordingly, Plaintiff does not make out a claim of copyright infringement by citing to elements which are common to the horror genre and therefore unprotectable, such as references to vampires [Dkt. 24 at 5], snakes [*id.* ¶ 47], skeletons [*id.* at 4, ¶ 171]; goosebumps [*id.* ¶ 83]; hell [*id.* ¶ 69]; hearing unidentified and unexplained voices [*id.* ¶ 30]; deaths caused by supernatural forces [*id.* ¶¶ 28, 57, 58, 91]; characters who are cursed and contemplate suicide [*id.* ¶ 89-91]; nightmares [*id.* ¶¶ 139-141]; a Ouija board [*id.* ¶ 178]; people who come back from the dead [*id.* ¶¶ 194-196]; characters whose hearts pound or who stop breathing when terrified [*id.* ¶¶ 212-213]; a storm that knocks out the power (in point of fact, the power does not go out in *Duma Key*) [*id.* ¶ 263]; or the

9

protagonist's attempt to destroy the evil, supernatural force (albeit under total different circumstances and by totally different means) [*id.* ¶¶ 33-34].

By the same logic, Plaintiff's claim is not furthered by reference to the following elements that could be found in any work describing artists: blank canvases [*id.* ¶ 8]; curators [*id.* ¶ 110]; discussions of or comparisons to famous artists [*id.* ¶¶ 111-114]; art school [*id.* ¶ 108]; art galleries [*id.* ¶ 109]; "sketch pads with numerous drawings" [*id.* ¶ 21]; cleaning paintbrushes [*id.* ¶ 229]; an artist's complete absorption in his work [*id.* ¶ 10]; secondary characters who are artists [*id.* ¶ 50]; paintings of natural elements [*id.* ¶ 180]; or paintings displayed on walls [*id.* ¶ 63]. None of these common ideas or themes can form the basis of a viable copyright claim.

In sum, Marquardt's surreply cannot change the fact that his claim rests on the same abstract similarity he pressed in his Complaint and opposition brief: the fact that *Keller's Den* and *Duma Key* are both "horror novels" in which an evil, supernatural force influences the protagonist's art – an idea which is neither novel nor copyrightable, particularly in the context of entirely different plots, with entirely different characters serving totally different purposes. *See, e.g., Dunn v. Brown*, 517 F. Supp. 2d 541, 545 (D. Mass. 2007).

The striking dissimilarity in the copyrightable expression contained in the two works in issue, when viewed as a whole – as evident from a mere reading of the books – compels dismissal of Plaintiff's claim.

## CONCLUSION

For the reasons stated herein and in Defendants' prior memoranda, Defendants respectfully submit that the Court should grant Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and award Defendants their costs, attorneys' fees and such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: June 27, 2011 | **DAVIS WRIGHT TREMAINE LLP** |
| 1633 Broadway, 27th Floor<br>New York, New York 10019<br>(212) 489-8230<br>(212) 489-8340 (fax) | */s/ Elizabeth A. McNamara*<br>Elizabeth A. McNamara, *pro hac vice* |
| | **CARLTON FIELDS, P.A.** |
| 1201 West Peachtree Street<br>Suite 3000<br>Atlanta, Georgia 30309<br>(404) 815-3400<br>(404) 815-3415 (fax) | */s/ Christopher B. Freeman*<br>Walter H. Bush<br>Georgia Bar No. 098825<br>Christopher B. Freeman<br>Georgia Bar No. 140867<br><br>*Attorneys for Defendants Stephen King and Simon & Schuster, Inc.*<br><br>*[Continued on next page]* |

11

5 Union Court  
Gloucester, Massachusetts 01930  
(978) 283-2263

**PETER HERBERT, ESQ**

*/s/ Peter A. Herbert*  
Peter A. Herbert, *pro hac vice*

*Co-Counsel for Stephen King*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

Pursuant to Local Rule 7.1(D), I hereby certify that this brief has been prepared in Times New Roman font, size 14, in accordance with Local Rule 5.1.

>	*/s/ Christopher B. Freeman*
>	Christopher B. Freeman

DWT 17432515v2 3901014-000644

# CERTIFICATE OF SERVICE

This is to certify that I have this day served the within and foregoing DEFENDANTS STEPHEN KING AND SIMON & SCHUSTER, INC.'S RESPONSE TO PLAINTIFF'S SURREPLY BRIEF by electronic notification through the Court's CM/ECF system and by mail to the address set forth below:

> Rod Marquardt, *pro se*
> 64 Sycamore Ridge Drive
> Simpsonville, SC 29681-4065

This 27th day of June, 2011.

> */s/ Christopher B. Freeman*
> Christopher B. Freeman

DWT 17432515v2 3901014-000644